IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JAYNI L. SARVER, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 10-1212 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| Defendant. | ) |  |

**MEMORANDUM OPINION**

I.  **Introduction**

Plaintiff Jayni L. Sarver ("Sarver") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. Pending before the Court are cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 16 & 20. For the reasons that follow, Sarver's motion for summary judgment (*ECF No. 16*) will be denied, the Commissioner's motion for summary judgment (*ECF No. 20*) will be granted, and the decision of the Commissioner will be affirmed.

II. **Procedural History**

Sarver protectively applied for DIB and SSI benefits on December 30, 2006, alleging disability as of August 2, 2005. R. at 88, 94, 104. The applications were administratively denied on June 22, 2007. R. at 64, 69. Sarver responded on August 24, 2007, by filing a timely request

1

for an administrative hearing. R. at 74. On September 3, 2008, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge David Hatfield (the "ALJ"). R. at 7. Sarver, who was represented by counsel, appeared and testified at the hearing. R. at 12-39. Frances Kinley ("Kinley"), an impartial vocational expert, also testified at the hearing. R. at 39-46. In a decision dated October 29, 2008, the ALJ determined that Sarver was not "disabled" within the meaning of the Act. R. at 52-63. The Appeals Council denied Sarver's request for review on July 8, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1. Sarver commenced this action on September 14, 2010, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 2. Sarver and the Commissioner filed motions for summary judgment on March 23, 2011, and May 23, 2011, respectively. ECF Nos. 16 & 20. In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to have this matter adjudicated by a United States Magistrate Judge. ECF Nos. 12 & 14. The cross-motions for summary judgment filed by the parties are the subject of this memorandum opinion.

**III.     Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

2

conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate

3

explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing

4

with a determination or judgment which an administrative agency alone is
authorized to make, must judge the propriety of such action solely by the grounds
invoked by the agency. If those grounds are inadequate or improper, the court is
powerless to affirm the administrative action by substituting what it considers to
be a more adequate or proper basis. To do so would propel the court into the
domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. The ALJ's Decision

In his decision, the ALJ determined that Sarver had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 57. Sarver was found to be suffering from trochanteric bursitis, degenerative arthrosis of the first carpometacarpal joint, depression, anxiety and migraine headaches. R. at 57. Although her migraine headaches were deemed to be "non-severe," her remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). R. at 57. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 58-59.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Sarver's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) with the opportunity to alternate between a
> sitting or standing position at least every thirty minutes; the claimant is limited to
> no more than occasional bending, stooping, crouching, crawling or balancing; the
> claimant should have no exposure to workplace hazards such as unprotected
> heights, dangerous moving machinery, or excessive vibration; no interaction with
> the public and no more than occasional interaction with co-workers.

5

R. at 59.[1]  Sarver had "past relevant work"[2] experience as a data entry clerk, janitor and floral checker.  R. at 40-41.  Kinley testified that an individual with Sarver's limitations would not be able to maintain those positions.  R. at 42.  Therefore, it was determined that Sarver could not return to her past relevant work.  R. at 61-62.

Sarver was born on July 27, 1963, making her forty-two years old on her alleged onset date and forty-five years old on the date of the ALJ's decision.  R. at 12, 62.  She was classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  She had more than a high school education and an ability to communicate in English.[3]  R. at 62, 107, 114; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5).  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Sarver could work as an office worker, a ticket checker, or a cafeteria attendant.  R. at 62-63.  Kinley's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  R. at 42.

## V.     Discussion

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).
[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[3] The record indicates that Sarver graduated from Butler High School in 1982 and later completed one year of college.  R. at 14, 114, 313.

6

or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). Where the claimant's residual functional capacity is shared with a large class of other individuals, the Commissioner's burden can be satisfied solely by reference to general guidelines. *Heckler v. Campbell*, 461 U.S. 458, 467-470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Allen v. Barnhart*, 417 F.3d 396, 405-408 (3d Cir. 2005). Where the claimant's residual functional capacity is relatively unique, the Commissioner can satisfy his burden only by producing evidence establishing the existence of jobs in the national economy that are consistent with the claimant's specific capabilities and limitations. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). In the latter scenario, the Commissioner's burden is commonly satisfied by means of vocational expert testimony. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Since Sarver suffers from a unique combination of physical and mental impairments, the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, were not dispositive of her claims. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Therefore, the ALJ relied on Kinley's testimony to determine that jobs consistent with Sarver's residual functional capacity existed in significant numbers in the national economy. R. at 62-63.

The Court's inquiry in this case is quite narrow. Sarver does not question the ALJ's evaluation of the medical evidence or dispute his residual functional capacity assessment. Instead, she contends that the ALJ should have rejected Kinely's testimony concerning the requirements of the specific positions identified at the hearing. ECF No. 17 at 6-7.

The record contains documentary evidence suggesting that Sarver suffers from anxiety and panic attacks, that she becomes "very anxious" outside of her home, and that she sometimes "avoids crowds." R. at 228, 231, 265, 297, 307. At the hearing, Sarver testified that she had experienced panic attacks while trying to interview for jobs. R. at 19. She stated that she

sometimes needed to leave family gatherings early in order to alleviate her symptoms. R. at 20. Sarver explained that she frequently opted to go shopping at night, when very few people were around. R. at 25-26. She further testified that her fear of crowds had often prevented her from eating in restaurants. R. at 28. The ALJ credited Sarver's testimony and determined that she was limited to jobs involving only occasional interaction with co-workers and no interaction with members of the general public. R. at 59. Sarver's arguments relate to those limitations. ECF No. 17 at 6-7.

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony properly incorporates all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). In this case, the ALJ's hypothetical question to Kinley included all of the limitations that were later incorporated into his residual functional capacity finding. R. at 41-42, 59. Moreover, Sarver does not purport to challenge the ALJ's assessment of "her *recognized* residual functional capacity." ECF No. 17 at 8 (emphasis added). For these reasons, Kinley's testimony was presumptively sufficient to satisfy the Commissioner's evidentiary burden at the fifth step of the sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 205-206 (3d Cir. 2008).

Sarver intimates that Kinley misunderstood the ALJ's requirement that the jobs in question involve only occasional "interaction" with co-workers and no "interaction" with

8

members of the general public. ECF No. 17 at 6. She contends that the ALJ's "interaction" preclusion extended not merely to interfacing with other individuals, but also to "being around" them. *Id.* The transcript of the hearing flatly refutes Sarver's argument. When the ALJ posed his hypothetical question to Kinley, he specifically *defined* the "interaction" that he was referring to as the act of *interfacing with* (rather than merely *being around*) others. R. at 41-42. When pressed by the ALJ, Kinley clarified that while a cafeteria attendant would have to "be around" members of the general public, he or she would not have to "interface with" them. R. at 42-43. There was no ambiguity in the ALJ's question. Thus, Sarver cannot impugn the reliability of Kinley's testimony by claiming that the ALJ's question was unclear.

Questioning the veracity of Kinley's testimony, Sarver surmises that office workers and cafeteria attendants must frequently interface with co-workers and members of the general public. ECF No. 17 at 7. She points to no evidence which supports her speculation. *Id.* If Sarver wishes to cast doubt on Kinely's testimony, she must demonstrate that it was somehow inconsistent with information contained in the Dictionary of Occupational Titles ("DOT"). *Rutherford v. Barnhart*, 399 F.3d 546, 557-558 (3d Cir. 2005); *Jones*, 364 F.3d at 505-506; *Boone*, 353 F.3d at 205-209. Sarver makes no attempt to surmount this hurdle. ECF No. 17 at 7. Although Kinley acknowledged that the DOT did not make reference to the sit/stand option described by the ALJ, she indicated that her testimony was otherwise consistent with the job descriptions found in the DOT. R. at 43. In the absence of a specific showing that Kinley's testimony was incorrect, the Court has no reason to discount it.

Sarver claims that ticket checkers do not ordinarily work on a full-time basis. ECF No. 17 at 7. Kinley testified that a ticket checker would ordinarily be expected to put admission tickets in order after an event, or to make sure that they were printed correctly prior to

9

distribution. R. at 45. She distinguished the role of a ticket *checker* from that of a ticket *taker*, who would inevitably be forced to interact with individuals attending an event. R. at 45. Sarver speculates that ticket checkers work only during the course of specific events, and that their hours do not add up to a full-time schedule. ECF No. 17 at 7.

The Court acknowledges that, at the fifth step of the sequential evaluation process, the Commissioner must establish the existence of *full-time* jobs in the national economy that comport with a claimant's capabilities and limitations. *Lawson v. Commissioner of Social Security*, 695 F.Supp.2d 729, 748 (S.D.Ohio 2010). This issue, however, was fully addressed at the hearing. When Sarver's counsel questioned whether ticket checkers generally worked on a full-time basis, the ALJ interjected and instructed Kinley that only full-time positions could be considered. R. at 45. Kinley responded by making clear that roughly 70,000 full-time ticket checker positions existed in the national economy. R. at 46. Sarver points to nothing in the record which contradicts Kinley's testimony. ECF No. 17 at 7. Under these circumstances, the Court has no basis for finding that testimony to be inadequate to sustain the ALJ's decision. *Rutherford*, 399 F.3d at 557-558; *Jones*, 364 F.3d at 505-506.

The record contains a copy of Kinley's resume. R. at 85-87. At the hearing, Sarver stipulated to Kinley's professional qualifications. R. at 39. At this juncture, Sarver cannot undermine Kinley's testimony simply by expressing disagreement with it.

## VI. <u>Conclusion</u>

Sarver does not quarrel with the ALJ's assessment of her residual functional capacity. ECF No. 17 at 6-8. The ALJ's hypothetical question to Kinley clearly and unambiguously made reference to all of Sarver's functional limitations. R. at 41-42. Since the ALJ adequately conveyed all of Sarver's limitations to Kinley, the testimony provided by Kinley in response to

the questions posed by the ALJ and Sarver's counsel constituted "substantial evidence" that jobs consistent with Sarver's residual functional capacity existed in the national economy. *Johnson*, 529 F.3d at 205-206. The Commissioner's decision denying Sarver's applications for DIB and SSI benefits will be affirmed.

s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc: All counsel of record.